PD 274                     Metropolitan Police Department
                                  Washington, D.C.

## Affidavit in Support of an Application for Search Warrant

[ ]   United States                    [X]   Superior Court of the
      District Court                   [X]   District of Columbia

---

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH THE PREMISES AT 2201A 14th STREET NORTHEAST, WASHINGTON, D.C., AND A SHED LOCATED IN THE REAR OF THE PREMISES**

The premises are further described as follows: 2201A 14th Street, Northeast, Washington, D.C., which is a red-brick, multi-story, attached row-house with a white front door with the numerals and letter "2"2"0"1"A" attached to the door in black. In the rear of the premises, attached to the structure of the row-house's wood rear deck is a light-colored shed with a light-colored door covered with a metal security door. This application is for a warrant to search both the row-house and the appurtenant shed described above. The affiant personally is familiar with the house and will be present during the execution of this warrant, if authorized, to ensure that the correct location is searched.

I, Lavinia A. Quigley, a Detective with the Metropolitan Police Department (MPD), in Washington, D.C., first being duly sworn, do hereby depose, aver, and state:

1.   This affidavit is submitted in support of an application for a warrant to search the house and connected shed at 2201A 14th Street N.E., Washington, D.C., because there is probable cause to believe that in this house and shed there now are illegal narcotics, specifically crack cocaine base, firearms and drug-related and gun-related paraphernalia and other items used to prepare illegal narcotics for sale, other drug paraphernalia, and documents relating to the possession and sale of illegal narcotics from this building.

### I. AFFIANT'S EXPERIENCE

2.   I have been a sworn officer with MPD since 1989. My current rank is a detective, grade one, assigned to the Major Narcotic Branch (MNB) of the Criminal Investigations Division, or its predecessors, including NSID, since August 1994. Before this assignment, I worked with the Rapid Deployment Unit (RDU) for four years, specializing in vice, narcotics, and gun-recovery

investigations. Throughout my law enforcement career, I have attended classes, seminars, and special training sessions on the manufacture, packaging, use, and distribution of controlled substances, as well as the detection and apprehension of narcotics traffickers.

3. I have served as an undercover officer buying illegal narcotics for more than ten years, and have made more than 2000 undercover purchases of illicit drugs of all kinds, including cocaine powder, crack cocaine, marijuana, and heroin. Because of my experience, I frequently am asked to assist in federal narcotics investigations by making undercover purchases of illegal drugs for such agencies as the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), and the Bureau of Alcohol, Tobacco, and Firearms (ATF). In the course of my police duties, I have interviewed hundreds of persons arrested in Washington, D.C., Maryland, and Virginia engaged in the illegal narcotics trade concerning their unlawful activities. Further, I have spent many hundreds of hours engaged in secret surveillance of persons involved in illegal narcotic activity. I also have participated in a number of long-term vice investigations that have resulted in prosecutions in federal and local courts in Washington, D.C. As a result, I often have testified in federal and local courts. In addition, I have served as the affiant for more than 200 narcotics or firearm search warrants issued by judges of the Superior Court of the District of Columbia and the U.S. District Court for the District of Columbia. Through this professional training and experience, I have become familiar with the street-level, retail, mid-level, and wholesale distribution and sale of illicit drugs and with the practices of narcotics-trafficking organizations of various sizes in the Washington, D.C., metropolitan area. I either know the information set forth in this affidavit from what I have observed, or other sworn law enforcement officers have recounted it to me. In the rest of this affidavit, when first-person pronouns are used, they refer to me.

## II. STATEMENTS OF FACT

4. Within the past week, I received information from a confidential informant that crack cocaine base regularly is being sold from the house and shed described above at 2201A 14th Street, N.E., Washington, D.C. Within the past three days the informant stated that it saw a black handgun gun on a table inside of the shed. This person is a reliable confidential informant because it has obtained information that was the basis for more than 30 affidavits supporting search warrants issued by judges of the Superior Court or the U.S. District Court for the District of Columbia. I have

applied for and obtained 15 search warrants based upon information received from this informant. These warrants have resulted in the seizure of a large amount of illegal drugs, principally crack cocaine base, and a number of illegally possessed firearms. When working under my supervision, this informant always has proved reliable. Its information to me about illegal narcotic activities always has been accurate. Other narcotic branch detectives who have worked with this informant also have told me that this informant's information is reliable and that it has been reliable when working with them. In this instance, the informant's information was corroborated by a controlled purchase of crack cocaine base, which I personally supervised.

5. Within the past three days, I drove this confidential informant to the immediate area of 2201A 14th Street, N.E., Washington, D.C. I searched the informant and found it had no illegal drugs and no money. Thereafter, I gave the informant money and told it to see if someone was selling illegal crack cocaine base at the location described above. I watched the informant walk to the rear of 2201A 14th Street, N.E., and engage in conversation with a male subject and they walked into the door of the shed. A short time later, I watched the informant walk out of the shed. The informant came directly back to where I was waiting. The informant gave me one clear ziplock containing white rocklike substance, which I recognized as suspected crack cocaine base. A field-test of this substance confirmed that it contained cocaine.

6. The informant told me that it had walked directly to the rear of 2201A 14th Street, N.E., and spoke with a male subject and they entered the shed. The male subject then sold it the suspected crack cocaine base. While inside the shed, the informant saw a black handgun on the table. After buying the crack cocaine, the informant said, it left the shed and came back to me with the drugs. After the informant had turned the suspected crack over to me, I searched it again and found no other drugs or money.

### III. NEXUS BETWEEN PLACE TO BE SEARCHED AND THINGS TO BE SEIZED

7. Based on my experience and training, I have learned that:

a. Persons who sell illegal drugs keep books, records, receipts, notes, ledgers, bank records, and other papers documenting their importation, manufacture, transportation, ordering, and sale and distribution of these drugs. They keep these papers where they have ready access to them, such as on their persons, in their cars, at their places of illegal business, and their homes.

b. Persons who deal in illegal drugs routinely have in their homes and places of business a secret place or cache to store the drugs, large amounts of cash and other proceeds of illegal drug transactions, as well as documents showing how they get, transfer, hide, or spend money made from selling drugs.

c. Persons who deal in illegal drugs commonly keep address lists and telephone books or other papers that reflect the names, addresses, or telephone numbers of their associates in their illegal organization. In addition, drug-dealers often use telephone systems and beepers or pagers to maintain contact with their associates in their illegal businesses or residences.

d. Persons who deal in illegal drugs often take or cause to be taken, photographs of themselves, their associates, their property, and their illegal drugs. These persons usually keep these photographs in their possession or at their residence.

e. Persons who traffic in controlled substances are not unlike other individuals in society in that they maintain documents and records. These documents and records will normally be retained for long periods of time regardless of whether their value to the individual has diminished. The documentary evidence that I have seized most commonly in other investigations includes telephone bills; address books; credit cards and hotel receipts documenting travel; mobile phone records; accounts and records in fictitious names; carbon copies of money orders and cashier's checks evidencing large cash expenditures; correspondence; and records indicating the existence of storage facilities ("stash houses") used in narcotics trafficking.

### IV. REQUEST FOR ISSUANCE OF SEARCH WARRANT:

8. Based upon the information recounted in this affidavit, I respectfully submit that there is probable cause to believe that at the house at 2201A 14th Street, N.E., and the shed, illegal drugs may be found and that there will be found evidence of drug-trafficking, specifically illegal narcotics, firearms, drug packaging materials and paraphernalia, cash and other proceeds of narcotic-

trafficking, and those items listed in Schedule A attached to this affidavit and incorporated herein. Therefore, I respectfully request that a warrant issue to search for and seize from 2201A 14th Street, N.E., and the shed the items listed in Schedule A, plus any other contraband found there.

Further than this, affiant sayeth not.

_____
Det. Lavinia Quigley, Affiant
Major Narcotics Branch

**Reviewed by**

_____
Assistant U.S. Attorney

_____
Subscribed and sworn to before me this 29th day of June 2005.
_____
Judge, Superior Court of the
District of Columbia