UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 05-279 (CKK) |
| | : | |
| SAMUEL DAVIS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL PRODUCTION OF
*BRADY* AND *GIGLIO* MATERIAL**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant's Motion to Compel the Production of Brady and Giglio material. In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding these motions.

**I. BACKGROUND**

The defendant is charged in a three count indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and two counts of Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844(a).

At a hearing or trial in this matter, government counsel expects the evidence for these charges to demonstrate substantially as follows: On June 29, 2005, at approximately 6:02 pm, officers of the Major Narcotics Branch (MNB) from the Metropolitan Police Department (MPD)

executed a narcotics search warrant at xxxxxxxxxxxxxxxxxxxxxxxxxxx, Washington, DC. The search warrant was for the residence as well as a shed that was located on the property.

A search of the premises resulted in the recovery of numerous items, including but not limited to: (1) one .45 caliber pistol loaded with seven rounds of ammunition located in a safe inside the shed along with 16 rounds of .45 caliber ammunition on the shelf above the safe; (2) loose green weed which field tested positive for marijuana, a digital scale, a white rock substance which field tested positive for cocaine base, numerous empty ziplock bags, three crack pipes, and a surveillance camera, all located inside the shed in or near the safe; (3) $910 in U.S. Currency and mail matter addressed to the defendant located within the safe inside the shed; and (4) a gun holster, numerous empty ziplock bags, mail matter and identifications in the name of the defendant, and a mirror with white residue all located in bedroom #1.

The defendant now seeks to compel the disclosure of "information concerning an MPD Internal Affairs Division investigation of the . . . Major Narcotics Branch" on the grounds that such information constitutes exculpatory and impeachment material pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972) . (Defendant's Brief, p.1). The basis of the defendant's request for such information arises from the publishing of a newspaper article reporting the existence of an administrative investigation by the Internal Affairs Division (IAD) of the MPD into alleged problems with how the Major Narcotics Branch logged and tracked property. Nowhere in the news report cited by the defendant, nor within the defendant's motion, is there any allegation that the investigation by IAD involves criminal conduct.

Furthermore, the undersigned counsel has conducted a search of the open investigative files of the United States Attorney's Office related to misconduct by officers of the MPD, and there is currently no investigation, criminal or otherwise, being conducted by the U.S. Attorney's Office into the subject matter of the IAD investigation referenced in the defendant's motion. Furthermore, the U.S. Attorney's Office does not have access to any IAD files which may exist and which may relate to this investigation. Accordingly, the defendant's motion is without merit and should be denied.

## II. ARGUMENT

Pursuant to the Supreme Court's decision in Brady, the government is required to disclose to the defense evidence that is favorable to the defendant, and material to guilt or punishment. Brady 373 U.S. at 87. Impeachment evidence challenging the credibility of government witnesses generally falls within the rules of disclosure set forth in Brady. Giglio 405 U.S. at 154.

In United States v. Brooks, 966 F.2d 1500, 1503 (1992), the D.C. Circuit held that in certain instances, the government's obligations under Brady require the United States Attorney's Office to search the files of the MPD's Internal Affairs Division. The Brooks Court addressed the issue of when the government's duty to search such files is triggered, stating that "[w]here the files link to the case is less clear, the court must also consider whether there was enough of a prospect of exculpatory materials to warrant a search. Id. The Court held that no such duty upon the government exists where the request for exculpatory materials is based on pure speculation. Id. In the Brooks case, the court found that there was a duty to search the MPD's files, where at a retrial the government introduced the transcribed testimony of an officer who

3

had testified in the first trial, but who had been killed with her own service revolver while in the presence of another police officer before the retrial began. In requiring the government to conduct a search of the IAD and homicide files related to the officer's death, the Court noted that while the probability was low that such files would yield any information on the dead officer's credibility, the request by the defendant was "above the range of utter speculation" given the circumstances surrounding her death and the link with her employment. Id.

Consistent with the approach of the D.C. Circuit in Brooks, other circuits have denied requests for disclosure of agency files based upon a claim that the files may contain Brady materials, where such claims are based upon pure speculation. United States v. Navarro, 737 F.2d 625, 630-31 (7th Cir. 1984) (rejecting as a "mere shot in the dark" a claim by defendant that the government should have checked the file of a government witness in possession of the Immigration and Naturalization Service on the theory that the file would contain information about a deal between the witness and the INS); See Riley v. Taylor, 277 F.3d 261, 301 (3rd Cir. 2001) (defendant seeking in camera inspection of government files to determine whether the files contain Brady material must make at least a plausible showing that the inspection will reveal material evidence, mere speculation is not enough); United States v. Pou, 953 F.2d 363, 367 (8th Cir. 1992) (holding that mere speculation that a government file may contain Brady material is not sufficient to require remand for in camera inspection).

In support of its decision to require the government to search the IAD and homicide files, the Brooks Court also noted that the defense counsel's request "pinpointed" files that could be searched without difficulty, as opposed to a request which would require the government to examine large volumes of files. Brooks 966 F.2d at 1503.

4

By contrast, in the instant matter, the defendant's request for information relating to the IAD investigation into the MNB's tracking of property does not meet any of the criteria set forth in <u>Brooks</u>. The defendant's motion is devoid of any assertions on how he believes the requested information would produce exculpatory or impeachment materials, nor how this information is linked to the particular facts of his case. Accordingly, the defendant's motion amounts to nothing more than a "fishing expedition" in its claim that the requested information will contain exculpatory or impeachment material. Furthermore, the defendant's motion makes the sweeping request that the Court order the government to produce "all discoverable materials concerning the MNB investigation." (Defendant's Brief, p.4). This request lacks any of the specificity discussed in <u>Brooks</u>, and appears more calculated as a device designed to obtain materials not otherwise discoverable under the rules of criminal procedure. <u>Navarro</u> 737 F.2d at 631 (stating that requiring prosecution to turn over files based upon "mere speculation would convert <u>Brady</u> into a discovery device and impose an undue burden upon the district court").

Finally, the defendant also fails to articulate how materials related to the IAD investigation would tend to demonstrate bias in favor of the government on the part of any MNB officers. As stated above, the U.S. Attorney's Office is not involved in the IAD investigation, does not have access to these files, and is not conducting an investigation of it's own into these matters. Accordingly, there can be no credible claim of bias by MNB officers in favor of the government as a result of the IAD investigation.

WHEREFORE, for the reasons stated above, the United States respectfully submits that the Defendant's Motion to Compel Production of Brady and Giglio Material be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
BAR NO. 451058

_____
STEVEN B. WASSERMAN
ASSISTANT UNITED STATES ATTORNEY
D.C. BAR NO. 453-251
FEDERAL MAJOR CRIMES SECTION
(202) 307-0031

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Opposition to Defendant's Motion to Compel the Production of Brady and Giglio Material is to be served upon counsel for the defendant, Jonathan Jeffress, Esquire, this 31st day of October, 2005.

_____
STEVEN B. WASSERMAN
ASSISTANT UNITED STATES ATTORNEY