IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 05-279 (CKK) |
| ) | |
| SAMUEL W. DAVIS, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT SAMUEL W. DAVIS'S
MEMORANDUM IN AID OF SENTENCING**

Defendant Samuel W. Davis, through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing. Mr. Davis has no objections to the final version of the Presentence Report ("PSR"), or the Probation Officer's finding that the Superior Court Sentencing Guidelines recommend a range of 14-32 months in this case, with the possibility of a "short-split" sentence. See PSR ¶ 41. For the reasons stated below, Mr. Davis respectfully submits that the Court should impose a guidelines sentence that includes not more than one year and one day of actual prison time. A guideline sentence of this sort recognizes the seriousness of the offense, but also will allow Mr. Davis to: (1) take full advantage of the Bureau of Prisons Residential Drug Treatment Program ("RDAP"); and (2) allow Mr. Davis to earn "good time" credit in completing his sentence.

**BACKGROUND**

**A. Samuel W. Davis's Background.**

Mr. Davis is a 49-year old male who will turn 50 years old on April 8, 2006, three days

before the scheduled sentencing in this case. Mr. Davis was raised on a family farm in rural Virginia, and has worked on the farm from time to time since a very young age. Mr. Davis is a veteran, having served 8 years in the United States Army. Among the other materials seized from Mr. Davis' house was an army holster from Mr. Davis's service days.

      Mr. Davis has a very strong work ethic. Mr. Davis is constantly concerned with making home improvements both to his own home in the District (he leases out the first floor as an apartment) and at the family farm in Virginia. When the police searched Mr. Davis' home on June 29, 2005, see infra, Mr. Davis was working with several other individuals on a new barbeque pit for the backyard. Undersigned counsel has visited the residence and seen the completed barbeque pit, as well as Mr. Davis' other home improvement projects. During Mr. Davis's inpatient treatment at the Second Genesis Residential Treatment Program, the staff noted among Mr. Davis's "strengths" that he is a hard worker. See Ex. 1 (Second Genesis Discharge Summary) at 1

      **B. The Offense Conduct.**

      This case arises from a search warrant executed at Mr. Davis' home on June 29, 2005. During a search of a shed located in the backyard of Mr. Davis' home, members of the Metropolitan Police Department discovered a handgun located inside of a safe. Officers also found ammunition, small amounts of marijuana and cocaine base, drug paraphernalia, and $910. The officers seized a laundry list of items from Mr. Davis's home, including all of his personal papers, personal photos, and, for reasons unknown, Mr. Davis's coin collection and all of his jewelry.

      There has been no allegation in this case that anyone ever saw Mr. Davis handle the

recovered firearm or employ it in any manner. Although Mr. Davis' is a "prohibited person" due to two felony convictions from the early-mid 1990s, given Mr. Davis's extensive military experience, he had at one point been very accustomed to owning a firearm. While Mr. Davis certainly should not have possessed a pistol, this case is clearly less egregious than those where convicted felons are carrying firearms out into the community.

### C. Indictment and Plea.

The criminal complaint lodged against Mr. Davis after his arrest on June 29, 2005 was dismissed after the preliminary hearing for lack of probable cause. On July 28, 2005, a grand jury indicted Mr. Davis on one count of unlawful possession of a firearm by a convicted felon and two counts of simple possession of a controlled substance. Pursuant to a written plea agreement, the government subsequently filed a superseding information charging Mr. Davis with a section 922(g) offense and with Carrying a Pistol Without a License ("CPWL"), in violation of 22 D.C.C. § 4504(a).

On December 22, 2005, Mr. Davis plead guilty to the CPWL offense. As part of the plea agreement, the government agreed to recommend a sentence in the middle of Mr. Davis' Superior Court guidelines range, which is 14-32 months in the "short split" category. The government also agreed to Mr. Davis' release from D.C. Jail into the Second Genesis Inpatient Drug Treatment Program. Mr. Davis arrived at Second Genesis on January 10, 2006.

### D. Mr. Davis's Substance Abuse Problem.

As reflected in the PSR, and in the Discharge Summary from the Second Genesis Program (Ex.1), Mr. Davis has a long history (over 32 years) of substance abuse. Mr. Davis first started abusing drugs when he was 18 years old and in the Army. See PSR ¶ 31. Importantly,

Mr. Davis was able to stay clean for about 15 years until he relapsed in 1989. See id. His drug-related issues became severe in the 1990s, and led Mr. Davis down a terrible path that included two felony convictions and several misdemeanor convictions, all of which were related to drugs in one way or another. See PSR ¶¶ 14-19.

During the seven years between Mr Davis's last conviction (1998) and this case, Mr. Davis avoided legal entanglements and has essentially been a "functioning" addict. During that time, Mr. Davis has focused on improving his financial situation and working on his home. He was able to steer clear of any legal trouble during this period. While Mr. Davis has still abused drugs, it is fair to say that he has done so in a more private and restrained manner in the last ten years, as opposed to Mr. Davis's low point in the mid-1990s.

As noted above, Mr. Davis was released from D.C. Jail to the Second Genesis Program on January 10, 2006. See Ex. 1 (Discharge Summary). **Mr. Davis successfully completed the Second Genesis program, including no positive drug tests.** See id. at 2. The counselors at Second Genesis recognized that Mr. Davis is a "hard worker," and report that Mr. Davis made significant progress during his month-long stay at the facility. See id. at 1. The counselors report that:

> During the middle phase of treatment the client began to demonstrate an understanding of the treatment concepts and how to apply them to reduce his stress. During the last phase of treatment the client appeared to have developed a better understanding of the disease concept of addictions. He maintained compliance with house rules and began displaying insight into some of his addiction issues.

Id. at 2.

Unfortunately, following his release from Second Genesis, Mr. Davis did not keep his

4

appointment with the New Directions Program. He did appear on his own volition for his Court date on February 28, 2006. Because Mr. Davis had failed to maintain contact with New Directions, however, the Court revoked Mr. Davis's bond and committed him to the D.C. Jail. Based on information available to counsel, Mr. Davis was not drug tested following the revocation of his bond because he could not initially provide urine, and the Pretrial Officer assigned to the case did not return for a second attempt at conducting a drug test.

## DISCUSSION

**I.    Mr. Davis Should Be Sentenced To No Longer Than One Year and One Day.**

In fashioning Mr. Davis's sentence, the Court has wide latitude under the Superior Court Sentencing Guidelines. Because Mr. Davis's guideline range is in the "short-split" category of sentences, the Court may "impose a prison sentence that falls within the prison range in the appropriate ... box, suspend execution of all but six months or less–but not all–of that sentence, and impose up to 5 years probation." D.C. Sentencing Guidelines, § 3-3. Thus, the lowest end of Mr. Davis's guideline range in this case would be a sentence of 14 months that was broken down to time served (approximately 2 months) plus 12 months suspended.

A "short-split" sentence that includes not more than a year and a day of prison serves all of the purposes of sentencing in this case. It is well within Mr. Davis's guideline range–indeed, a sentence that included only time served would be--and therefore will not create unwarranted disparities among different defendants. And while a year in prison is a substantial term of incarceration that recognizes the seriousness of the offense, a year sentence is not so long that it will become merely punitive. A year and a day of actual prison time recognizes that although Mr. Davis did illegally possess a pistol, the circumstances–specifically, the location of the

5

weapon in Mr. Davis's safe–are not nearly as egregious as those cases where felons are carrying weapons out into the community.

Importantly, a sentence of one year and one day will also accomplish two other crucial objectives. First, it will permit Mr. Davis to participate in and successfully complete the "500 hour" Residential Drug Treatment Program ("RDAP"). See Ex. 2 ("Reducing Recidivism: The Bureau of Prisons Comprehensive Residential Drug Abuse Program," by Allan Ellis, J, Michael Henderson, and James Feldman, Jr.). While Mr. Davis may not be eligible for early release under the program, he is determined to take advantage of the program in order to gain better insight into his long history of substance abuse. As reflected in the attached description of the RDAP program, an inmate can complete the program within nine months. See id. at 3 ("RDAP can now be completed in as little as nine months"). The benefits of the RDAP program for offenders and for the community are well-recognized. See id. at 3 (citing to B.O.P. study finding that "RDAP participants are significantly less likely to recidivate and less likely to relapse upon release than non-participants").

Second, by imposing a sentence that includes a year **plus one day** of actual prison, the Court will make Mr. Davis eligible for good time credit, which will provide him with every incentive to be a model inmate and to avoid any further drug use. See 28 U.S.C. § 3624(b)(1) (federal prisoner is not eligible for "good time credit" unless his sentence is "more than one year"). By imposing a prison sentence of one year and one day (and a suspended portion of whatever length deemed appropriate over two months), the Court follows the guidelines **and** ensures that Mr. Davis will (1) be able to take advantage of RDAP; and (2) have every incentive under the federal "good time" statute to be a model inmate.

6

**CONCLUSION**

  For the above-stated reasons, the defendant, Samuel W. Davis, respectfully submits that the Court sentence him to the low end of his applicable guideline range of 14-32 months. As this range allows for a "short-split," Mr. Davis further requests that the Court suspend part of that sentence, such that Mr. Davis has a total period of incarceration of one year and one day. This sentence recognizes the seriousness of the offense but will allow Mr. Davis to take advantage of the RDAP and provide Mr. Davis with incentives under the federal "good time" statute, 28 U.S.C. § 3624(b)(1).

Respectfully submitted,

_____
Jonathan S. Jeffress, AFPD
Counsel for Samuel W. Davis
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004

(202) 208-7500, ex. 134