# EXHIBIT 1

### Discharge Summary

Samuel Davis, a 49-year-old African American male entered treatment here at the Harvard Street Facility on January 10, 2006. DC Pretrial referred client. Client's primary presenting problem upon admission is his cocaine/heroin addiction. Client has a 32-year history of poly drug abuse. Upon discharge, client will reside at 2201 14th St. NE. Wash, DC 20018. During the assessment phase of treatment it was discovered that his strengths, needs, abilities and preferences were:

**Strengths**: Hard worker
**Needs**: Relapse prevention education.
**Abilities**: Experience cook and construction worker.
**Preferences**: Complete the program.

Much of the course of client's treatment client appeared to be in denial about the severity of his addiction. Client appeared to take little of the opportunity that treatment presented for reorienting his life. He indicated that he had learned the principles of the therapeutic community, gained an understanding of the disease of addiction, learned effective coping techniques to deal with his feelings but he had difficulty verbalizing what he learned. His treatment plan included: Learning to identify his defense mechanisms and how to reduce his anxiety and stress. Clinically client participated in the following groups: Anger Management, Chemical Dependency Education, Community Meeting, Encounter, Criminal and Addictive Thinking, Family Groups, Nutritional Education Groups, Relapse Prevention, Self-Esteem and Vocational Groups. His therapeutic job function was in the kitchen to help him with developing better interpersonal skills and how to help others. During the initial phase of treatment client demonstrated poor impulse control and poor listening skills. He indicated that he had very little patience with others and that he felt

U.S.Probation Office 4/4/2006 11:24:05 AM   PAGE   3/003   Fax Server
Case 1:05-cr-00279-CKK   Document 47   Filed 04/06/2006   Page 3 of 9

02/22/2006 WED 16:22  FAX 202 222 0125 second genesis dc                                                   ☒003/003

unfairly treated. Client indicated that he used drugs and other substances because he enjoyed them, not because he has a problem with them. He denied being an addict. During the middle phase of treatment the client, began to demonstrate an understanding of the treatment concepts and how to apply them to reduce his stress. During the last phase of treatment the client appeared to have developed a better understanding of the disease concept of addictions. He maintained compliance with house rules and began displaying insight into some of his addiction issues.

During treatment the client submitted to 4 urine screenings, which three came back negative, one pending.

Client completed treatment and was officially discharge on February 7, 2006.

For additional discharge information on Mr. Davis, please review the Discharge Disposition Plan.

*Bernard Gatewood CACT 2-7-06*
Primary Counselor Signature, Credentials & Date

*[signature] CAC 2/7/06*
Clinical Supervisor Signature, Credentials & Date

2

# EXHIBIT 2

910 Irwin Street
San Rafael, CA 94901
415-460-1430 Phone
415-460-1630 Fax

# REDUCING RECIDIVISM:
## THE BUREAU OF PRISONS COMPREHENSIVE RESIDENTIAL DRUG ABUSE PROGRAM

By Alan Ellis, J. Michael Henderson, and James H. Feldman, Jr.

The Federal Bureau of Prisons' 500-hour Comprehensive Residential Drug Abuse Program (RDAP) is a specialized program for offenders with substance abuse problems. Today, RDAP is the only BoP program, other than the good conduct time provided by 18 U.S.C. § 3624(b), through which an inmate may reduce his sentence. It was not always so.

In 1989, when the BoP implemented its first three residential Drug Abuse Treatment Pilot Programs (DAP), an inmate who completed the then 12-month-long program received no reduction in sentence. Low numbers of DAP volunteers led the BoP Executive Staff to approve residential Drug Abuse Treatment Program incentives in October 1991. Those incentives included performance pay awards, and special T-shirts, ball caps, and pens, but no possibility of sentence reduction. All that changed with the passage of the 1994 Violent Crime Control and Law Enforcement Act (VCCLEA). This important legislation mandated a number of changes, the most significant of which authorized the BoP Director to provide up to a 1-year sentence reduction for non-violent inmates who successfully completed a residential Drug Abuse Treatment Program (RDAP). *See* Section 32001 of the Act (codified at 18 U.S.C. § 3621(e)(2)(B)). The same section of the VCCLEA also required the Bureau by the end of Fiscal Year 1997 to provide residential drug abuse treatment for all inmates who were "eligible." In May 1995, the BoP revised its policy, in accordance with the VCCLEA, to require a verifiable, documented drug, alcohol, or prescription abuse problem before an inmate can be admitted to the program.

RDAP now has the potential to benefit a large percentage of the federal inmate population. When the BoP screened thousands of presentence reports in Fiscal Years 2002 and 2003, it discovered that approximately 40% of inmates entering BoP custody met the criteria for a substance abuse disorder. While not all inmates are eligible for RDAP, a broad category of offenders are. For those who complete the program, many, but not all, will be eligible for the early release benefit of up to 12 months (the current BoP average is between seven and eight months), and an extended halfway house placement (usually 6 months) with possible home confinement at the end of their sentences. *See* 18 U.S.C. § 3621(e).

The following categories of inmates are not eligible for early release:

1   Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, aggravated assault, or child sexual abuse offenses.

2   Inmates whose current offense is a felony that:

   o   has as an element, the actual, attempted, or threatened use of physical force against the person or property of another;

   o   involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives. This restriction also affects inmates with firearms convictions and inmates who have received a two level adjustment in their drug guideline offense severity score for possession of "a dangerous weapon" (including a firearm) pursuant to U.S.S.G. § 2D1.1(b)(1);

   o   by its nature or conduct presents a serious potential risk of physical force against the person or property of another; or

   o   by its nature or conduct involves sexual abuse offenses committed upon children;

   For additional information for specific crimes that would preclude an inmate from an early release, see Bureau of Prison Program Statement 5162.04 which can be found at http://bop.gov/policy/progstat/5162_004.pdf. While these offenses preclude an offender from an early release, they do not necessarily preclude him or her from RDAP and its extended pre-release placement.

Although RDAP is not offered at high security federal penitentiaries, it is offered at many other BoP institutions at all other security levels. *See* Appendix A. Because RDAP is in high demand, inmates sometimes must be transferred to a different facility to participate in the program. An institution's case management staff, the RDAP coordinator, and psychology services staff determine an inmate's eligibility for RDAP. The first thing they look for is verification of an inmate's substance abuse problem. They do this by checking the available official documents, which almost always includes the presentence investigation report (PSI).

Because the PSI is the primary document on which the BoP relies for its RDAP placement decisions, defendants should frankly inform U.S. Probation Officers about substance abuse, including the abuse of alcohol and prescription drugs. Other documentation of abuse, such as medical records, should, whenever possible, be included with the PSI and Judgment Order that are forwarded to the Bureau of Prisons when a prison designation is requested by the U.S. Marshal's Service. Although U.S. Probation Officers preparing PSIs always ask defendants during the presentence interviews about substance abuse, sometimes defendants withhold that information, fearing that it might harm them later. When the PSI does not report substance abuse, it is still possible for a defendant to eligible for RDAP if his or her history of substance abuse can be documented to the satisfaction of the Bureau. That history of abuse can be established by written documentation provided by medical or mental health professionals familiar with

the offender.

Once the BoP is convinced that an inmate has a substance abuse problem, the offender must meet formal psychological diagnostic criteria. Bureau of Prisons staff look to official background documentation, such as the PSI, for information that supports such a diagnosis. Although an inmate must satisfy formal psychological diagnostic criteria for substance abuse, he or she must not have a serious mental disorder which would interfere with his or her ability to successfully participate in RDAP. Before being accepted into the program, an inmate must also pass an eligibility interview with RDAP or psychology staff. Finally, because the program is voluntary, an eligible offender must sign a formal participation agreement. Although an inmate does not need a judicial recommendation to be admitted to RDAP, a recommendation can help make sure an otherwise qualified offender is admitted to RDAP.

RDAP classes are called cohorts, because participants are housed together in designated quarters, rather than in quarters which also house non-RDAP inmates. Participants spend a portion of each day in RDAP, which includes intensive therapy five days a week. Inmates spend the remainder of their day at institutional work or education assignments. Once inmates complete RDAP, they receive aftercare treatment services both in the general population and after they are transferred to community corrections centers. This maximizes the carry-over of skills and ensures an effective transition from the institution program to the community.

RDAP can now be completed in as little as nine months. Optimally, when offenders complete the program, they are transferred to community correctional centers (halfway houses) for transitional pre-release program assistance for up to six months. When the inmate is within ten percent of his 3621(e) release date (full sentence length less good conduct time less reduction for successful completion of the RDAP in- and out-patient program), s/he is eligible for referral to home confinement.

Currently, there are approximately 6,000 inmates enrolled in RDAP at 49 different prisons, with approximately 7,600 more inmates waiting to get in the program.

RDAP is not only good for prisoners, it also benefits society in general. That is the conclusion of a study performed by the Bureau of Prisons in conjunction with the National Institute on Drug Abuse. That study, known as the TRIAD Drug Treatment Evaluation Project, can be found in its entirety at http://www.bop.gov/news/research_reports.jsp#drug. Among its findings: (1) RDAP participants are significantly less likely to recidivate and less likely to relapse upon release than non-participants; (2) RDAP participants are significantly less likely to relapse to drug use; and (3) women inmates who complete the program have improved employment figures after release. In addition, an evaluation of inmate behavior found that institutional misconduct among male inmates who completed RDAP was reduced by 25 percent when compared to misconduct among similar non-participating male inmates; and institutional misconduct among female inmates who completed residential treatment was reduced by 70 percent. These results demonstrate that residential drug abuse treatment in corrections-based settings makes a significant difference in the lives of

inmates following their release from custody and yields a significant benefit to institution safety and security.

---

**Alan Ellis,** a past president of the National Association of Criminal Defense Lawyers (NACDL), is a nationally recognized authority in the fields of plea negotiations, sentencing, appeals, parole and prison matters, habeas corpus 2241 and 2255 petitions and international prisoner transfer treaties. The United States Court of Appeals for the Ninth circuit has described him in a published decision as a "nationally recognized expert in federal criminal sentencing." As founder of the Law Offices of Alan Ellis, with offices in San Francisco, Philadelphia, and Bangkok, Thailand, for the past 35 years, he has successfully represented federal criminal defendants and prisoners throughout the United States and abroad. He is a sought-after lecturer in criminal law education programs for attorneys and is widely published in the areas of federal sentencing and post conviction remedies, with more than 85 articles to his credit. He is the publisher of three highly acclaimed guidebooks: the *Federal Sentencing Guidebook*, the *Federal Post Conviction Guidebook* and the *Federal Prison Guidebook*. Mr. Ellis also publishes "Federal Sentencing and Post Conviction News." He has recently authored several articles on the United States Supreme Court's decision in *United States v. Booker* entitled "All About Booker," "Litigating in a Post-*Booker* World" and "Representing the White Collar Client in a Post-*Booker* World." He is also a contributing editor for ABA *Criminal Justice* Magazine for whom he authors a regular column on federal sentencing.

**J. Michael Henderson** is a federal prison consultant to the Law Offices of Alan Ellis. Mr. Henderson has over 23 years of experience working with the Bureau of Prisons. Mr. Henderson served as the Regional Designator for the Western Region of the United States in the early 90s, and from 1997 until his retirement in 2000. In that capacity, his duties included oversight of the Federal Bureau of Prisons classification of newly-sentenced federal offenders in the western part of the United States. Mr. Henderson also worked at several prisons ranging from administrative to high security, and at the Bureau of Prisons North Central Regional Office in Kansas City. He helped revise and implement BoP policies in the areas of Central Inmate Monitoring and Designations, and also provided staff training in these areas. During his career, Mr. Henderson has received numerous awards and recognition for his work, including noteworthy awards from the inmate branch of the NAACP at FPC Allenwood and the Bureau of Prisons' National Stanford Bates Award for outstanding contributions to improved case management. He is the co-author of the *Federal Prison Guidebook*, and numerous articles on the Bureau of Prisons.

**James H. Feldman, Jr.,** is a senior associate in the firm's Pennsylvania office. Since joining the firm in 1989, he has handled numerous sentencings, appeals, and § 2255 motions in federal courts throughout the United States. He is Editor of Federal Presentence and Post Conviction News, and co-author of the *Federal Sentencing Guidebook* and the *Federal Post Conviction Guidebook*. Mr. Feldman has also authored numerous articles on federal sentencing and post conviction remedies including "Litigating in a Post-*Booker* World," "Representing the White Collar Client in a Post-*Booker* World," and "A 2255 and 2241 Primer." After earning his law degree in 1976 from the University of Cincinnati College of Law, Mr. Feldman engaged in the solo

practice of law there until 1982, when he moved to Philadelphia to serve as staff attorney for the Central Committee for Conscientious Objectors. As a result of his work with CCCO, Mr. Feldman is one of a handful of attorneys in the United States experienced in litigating habeas petitions on behalf of members of the United States armed forces. He currently serves on the board of the Washington, D.C. based Center on Conscience and War.

REDUCING RECIDIVISM APPENDIX A

RESIDENTIAL DRUG ABUSE TREATMENT PROGRAMS IN THE BOP

| Institution/State | Mos | Security Level | Sex | Other |
|---|---|---|---|---|

Mid-Atlantic Region

| Institution/State | Mos | Security Level | Sex | Other |
|---|---|---|---|---|
| FPC Alderson, WV | 9 | Minimum | Female | |
| FCI Beckley, WV | 9 | Medium, Minimum | Male | |
| FCI Butner, NC | 9 | Low | Male | |
| FCI Butner, NC | 9 | Medium | Male | |
| FCI Cumberland, MD | 9 | Minimum | Male | |
| FMC Lexington, KY | 9 | Low, Medium | Male | Additional dual dx progr: |
| FCI Morgantown, WV | 9 | Minimum | Male | |

North Central Region

| Institution/State | Mos | Security Level | Sex | Other |
|---|---|---|---|---|
| FCI Englewood, CO | 9 | Minimum | Male | |
| FCI Florence, CO | 9 | Medium, Minimum | Male | |
| FCI Greenville, IL | 9 | Minimum | Female | |
| USP Leavenworth, KS | 9 | Minimum | Male | |
| FCI Milan, MI | 9 | Low | Male | |
| FCI Oxford, WI | 9 | Medium | Male | |
| FCI Sandstone | 9 | Low | Male | |
| FCI Waseca, MN | 9 | Low | Male | |
| FPC Yankton, SD | 9 | Minimum | Male | |

| Institution/State | Mos | Security Level | Sex | Other |
|---|---|---|---|---|

Northeast Region

5